IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**District Judge Philip A. Brimmer**

Civil Action No. 25-cv-03241-PAB

DAVID DONIS,

Applicant,

v.

JENNIFER HANSEN, and
PHILLIP J. WEISER, Attorney General of the State of Colorado,

Respondents.

---

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

---

Applicant, David Donis, is a prisoner in the custody of the Colorado Department of Corrections. Mr. Donis has filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 1]. Mr. Donis challenges the validity of his conviction and sentence in the District Court for El Paso County, Colorado, case number 07CR1477. Respondents have filed an Answer, Docket No. 26, and the state court record. Mr. Donis has filed a reply, Docket No. 29.

After reviewing the entire record before the Court, the Court concludes Mr. Donis is not entitled to relief.

## I. BACKGROUND

Mr. Donis "was convicted by a jury on one count of first degree kidnapping, two counts of second degree kidnapping, two counts of first degree burglary, two counts of aggravated robbery, one count of second degree assault, and one count of felony menacing." Docket No. 12-9 at 4. In his most recent state court postconviction appeal,

the Colorado Court of Appeals described the relevant facts of the crimes as follows:

> Donis, who rented the basement apartment in the victim's house, had purchased a truck from the victim. Donis made payments toward the purchase of the truck based on a payment plan. After police suspected that Donis had committed a crime in the apartment, the victim demanded that Donis move out and immediately pay the remaining balance owed for the truck. Donis asked for time to remove his belongings and pay the balance.
>
> One week later, the victim repossessed the truck and called Donis' son to retrieve Donis' possessions, which the victim had placed outside the house. Approximately two weeks later, Donis and a female accomplice drove to the victim's house, broke in, and forced the new tenant to carry several bags of the victim's belongings out of the house.
>
> The victim returned shortly thereafter, and Donis and the woman approached him. Donis and the woman knocked the victim to the ground and assaulted him, and Donis struck the victim with a pistol. Donis threated [sic] to kill the victim if the victim did not return Donis' money or give Donis the truck title. The victim offered to give Donis the title, which the victim said was inside the house. Still armed with the pistol, Donis continued to hit and threaten the victim while the two entered the house. After obtaining the title, Donis demanded that the victim take him to the truck, which was parked at another location. Donis attempted to force the victim into a car, but the victim escaped. Donis and the woman fled in the car.

*Id.* at 3-4.

Mr. Donis asserts eight numbered claims in the Application, each of which refers to multiple constitutional amendments and theories. In a Pre-Answer Response, Docket No. 12, Respondents identified nineteen separate claims for relief. Mr. Donis filed a reply to the Pre-Answer Response, Docket No. 15, that addresses the same nineteen claims. On February 26, 2026, the Court entered an Order, Docket No. 22, dismissing fourteen of the nineteen claims and directing Respondents to file an answer that addresses the merits of claims 10, 12, 13, 15, and 16. In the remaining claims, Mr.

Donis contends trial counsel was ineffective by failing to request a jury instruction on voluntary intoxication (claim 10), trial counsel was ineffective by confessing Mr. Donis' guilt in his opening statement (claim 12), trial counsel was ineffective by failing to introduce evidence of witness misidentification (claim 13), the trial court erred by preventing Mr. Donis from representing himself at trial (claim 15), and the trial court misadvised Mr. Donis about the effects of testifying at trial (claim 16). Additional facts pertinent to the remaining claims are set forth below.

## II. STANDARDS OF REVIEW

The Court must construe the Application and other papers filed by Mr. Donis liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See* Hall, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Donis bears the burden of proof under § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court's inquiry is straightforward "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Donis seeks to apply a rule of law that was clearly established by the Supreme Court at the time the state court adjudicated the claim on its merits. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

A state court decision is contrary to clearly established federal law if the state court either applies a rule that contradicts governing Supreme Court law or decides a case differently than the Supreme Court on materially indistinguishable facts. *See House*, 527 F.3d at 1018. "A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts." *Id.* A decision is objectively unreasonable "only if all fairminded jurists would agree that the state court got it wrong." *Stouffer v. Trammel*, 738 F.3d 1205, 1221 (10th Cir. 2013) (internal quotation and citation omitted). Furthermore,

> Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more

> leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation modified).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006); *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103. Notably, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. The court must presume the state court's factual determinations are correct. Mr. Donis bears the burden of rebutting the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to factual findings of the trial court as well as state appellate courts. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). The presumption of correctness also applies to implicit factual findings. *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017). "But if the petitioner can show that the state courts plainly misapprehended or misstated the record in making their

findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (citation modified).

Finally, the Court's analysis is not complete even if Mr. Donis demonstrates the state court decision is contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented. *See Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019). Rather, if the requisite showing under § 2254(d) is made, the Court must consider the merits of the constitutional claim *de novo*. *See id.* at 1056-57.

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court reviews the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See id.* at 1057. However, even if a claim is not adjudicated on the merits in state court, the Court still must presume the state court's factual findings pertinent to the claim are correct under § 2254(e). *See id.*

## III. MERITS OF REMAINING CLAIMS

### A. Ineffective Assistance of Counsel Claims

Mr. Donis asserts three claims that trial counsel was ineffective. He specifically contends counsel was ineffective by failing to request a jury instruction on voluntary intoxication (claim 10), confessing Mr. Donis' guilt in his opening statement (claim 12), and failing to introduce evidence of witness misidentification (claim 13).

Clearly established federal law provides that a defendant in a criminal case has

a Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish counsel was ineffective Mr. Donis must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id*. at 687. If Mr. Donis fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See id.* at 697.

In general, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id*. It is Mr. Donis' burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id*.

In the context of federal habeas corpus review under § 2254(d), a state prisoner claiming counsel was ineffective "faces an even greater challenge." *Harmon*, 936 F.3d at 1058. "When assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [federal courts] defer to the state court's determination that counsel's performance was not deficient and, further, to the attorney's decision in how to best represent a client." *Id.* (citation modified). Thus, review under § 2254(d) is doubly deferential. *See id.* Furthermore,

> federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether *any* reasonable argument exists that counsel satisfied *Strickland's* deferential standard. And because the *Strickland* standard is a general standard, a state court has . . . more latitude to reasonably determine that a defendant has *not*

satisfied that standard.

*Id.* (citation modified).

Under the prejudice prong Mr. Donis must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Richter*, 562 U.S. at 112 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable"). In determining whether Mr. Donis has established prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Donis. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

**1. Claim 10**

Mr. Donis argues that counsel should have raised a voluntary intoxication defense and requested a jury instruction on voluntary intoxication because evidence admitted at trial indicated he had smoked crack cocaine at or near the time of the alleged offense. The Colorado Court of Appeals applied *Strickland* and rejected this ineffective assistance claim because trial counsel's strategic decision not to raise the defense was reasonable. The state court reasoned as follows:

> Testimony presented during the postconviction hearing in this case established that defendant's trial attorneys made a strategic decision: they would not raise an involuntary intoxication defense. Rather, their strategy was to portray defendant as a reasonable person who had tried to resolve a dispute peacefully; the prosecution's evidence to the contrary was unreliable. Offering evidence of defendant's cocaine use would have been "wholly inconsistent" with this "reasonable man" strategy.
>
> One of defendant's trial attorneys testified that "the common

perception of someone on cocaine is a wild and crazy person that might go in and pistol whip somebody and drag him around the house," which is what the prosecution contended that defendant did in this case. His trial attorneys did not want to suggest that his behavior during the crime had been consistent with this "common perception."

Contrary to defendant's contention, the record shows that his trial attorneys followed their strategy at trial. In opening statement, one of them stated that defendant did

> what any of us would do, and [said], you give me back my money, or you give me back my car. And if you don't, the big threat: If you don't, I'm going to call the police. Exactly what you would do if you purchased a car from somebody.

And, in closing argument, one of them argued that defendant

- tried to "go over to the [victim's] house and knock on the door to say, look, I want to pay you what I still owe you for the truck";
- "[did] not threaten violence"; and
- "had been [to the victim's house] for a legal reason."

We reject defendant's contention that his trial attorneys contradicted their strategy because they had "painted [defendant] as a crack-addled assailant" when cross-examining a witness. We read the cross-examination upon which he bases this argument differently than he reads it. Rather than conceding that defendant was under the influence of crack cocaine during the crime, this cross-examination merely repeated the language that the witness had used during direct examination. And, looking at this cross-examination in light of defendant's entire defense, we conclude that it was designed to mesh with the trial attorneys' contention that the physical evidence was inconsistent with the victim's description of the crimes.

We conclude that the record supports the postconviction court's determination that defendant's trial attorneys had good reasons to follow their strategy and to eschew the defense of voluntary intoxication. Defendant has not rebutted the "virtually unchallengeable" presumption that this strategic choice was objectively reasonable. *See Ardolino*, 69 P.3d at 76. We therefore further conclude that the record supports the

> postconviction court's decision to reject defendant's ineffective assistance of counsel claim.

Docket No. 12-5 at 5-7 (alterations in original).

Mr. Donis fails to demonstrate the state court's determination was contrary to clearly established federal law under § 2254(d)(1). That is, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Mr. Donis also fails to demonstrate the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). To satisfy § 2254(d)(2), Mr. Donis must demonstrate the state court's factual determination is objectively unreasonable, and that the state court decision is based on the objectively unreasonable factual determination. *See Smith v. Aldridge*, 904 F.3d 874, 880 (10th Cir. 2018). "Simply stated, proving an unreasonable determination of fact is difficult to do – just as it was meant to be . . . because AEDPA functions as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id*. (internal quotations and citations omitted).

Here, as recounted in the excerpt above, the state court determined that defense counsel made a strategic decision to pursue a reasonable man defense and that counsel followed that strategy at trial. The Court presumes these factual findings are correct, and Mr. Donis fails to present clear and convincing evidence to rebut the

presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Based on the Court's review of the state court record and the state court postconviction proceedings in particular, the Court cannot conclude that Mr. Donis has shown "the state courts plainly misapprehended or misstated the record in making their findings, and the misapprehension goes to a material factual issue that is central to [his] claim[s]." *Smith*, 824 F.3d at 1241 (alterations and citation omitted).

With respect to the "unreasonable application" clause of § 2254(d)(1), Mr. Donis argues the state court unreasonably applied *Strickland* because counsel failed to investigate a voluntary intoxication defense. According to Mr. Donis, counsel knew that evidence of drug usage would be introduced at trial and "[c]ounsel's failure to evaluate or utilize that evidence demonstrates not strategy – but omission." Doc. 29 at 5.

The Court is not persuaded. It is true that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. But Mr. Donis does not identify what counsel failed to investigate and he does not identify what evidence additional investigation would have uncovered. He simply argues that counsel should have pursued a voluntary intoxication defense that was inconsistent with the reasonable man defense counsel elected to pursue.

Under these circumstances, Mr. Donis fails to demonstrate the state court's rejection of this ineffective assistance of counsel claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The Court reiterates

that "[t]he question [under § 2254(d)] is whether *any* reasonable argument exists that counsel satisfied *Strickland's* deferential standard." *Harmon*, 936 F.3d at 1058. The state court's analysis above, i.e., that counsel made a strategic decision not to pursue a voluntary intoxication defense because it was inconsistent with a reasonable man defense and counsel followed that strategy at trial, is a reasonable application of *Strickland*. Strategic choices "made after thorough investigation . . . are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

For these reasons, Mr. Donis is not entitled to relief with respect to claim 10.

**2. Claim 12**

Mr. Donis contends in claim 12 that counsel was ineffective by confessing Mr. Donis' guilt in his opening statement. According to Mr. Donis, counsel affirmatively conceded several essential elements of the charged crimes by stating Mr. Donis was present at the scene of the alleged crimes, there was movement of the alleged victim from the driveway/garage into and through the home, Mr. Donis obtained the title to the vehicle, a physical altercation occurred that may have been third-degree assault, and Mr. Donis' vehicle was at the crime scene. The relevant portion of defense counsel's opening statement is the following:

> Good morning. Let's talk about what really happened. This is not about choices and bad decisions and things like that. It's about a Ford Explorer. Okay? It's about a Ford Explorer that [the victim] sold to Mr. Donis.
>
> You will hear not only did Mr. Donis make some payments, he almost fully paid off the Ford Explorer, and he was using the Ford Explorer while he paid it off. Well, [the victim] decides to come over and take that Ford Explorer back. He just comes and takes it.

So what does Mr. Donis do? Well, he calls [the victim], like any of us would do, and says, you give me back my money, or you give me back the car. And if you don't, the big threat: If you don't, I'm going to call the police. Exactly what you would do if you purchased a car from somebody. This is about ten days prior to this incident.

Well, he doesn't hear back. So what does he do? He goes over to [the victim's] residence. Now this is not the case where some guy creepily shows up at the car dealer's house. As you heard from the District Attorney, he used to live there, he used to rent a room, so he knows where it is, he knows [the victim] personally. He shows up, and again, he wants his money back, or the car.

Now, you have heard the charges, you have heard what the District Attorneys have decided to charge him with in this case. You have heard the charge of kidnapping. Here is what the evidence is going to show about kidnapping: The evidence is going to show that this meeting, argument, started in the driveway slash garage of [the victim's] house. And this meeting and argument ended in the driveway slash garage of [the victim's] house.

Now, in between they went inside briefly to get the title of the car, okay? There is your kidnapping evidence. Starts and ends right there in the garage, in the driveway.

So the story [the victim] tells, he will get on the stand and he'll tell you, is that they jump out of this car, they attack him. They hit him too many times to count. They are hitting him with a gun. Well, what will the evidence show you? The evidence will show you he has maybe some bruises and some cuts, maybe there was a third-degree assault, a physical altercation. The evidence will absolutely not support somebody being beaten too many times to count by two individuals with a gun.

Don't take my word for it, you'll see the photos. Also you will look for corroboration. We can go to the neighbors. Okay? You have the neighbors right next door. That's the first place [the victim] runs, bangs on their door, tries to get in. Then you will hear, lays in their yard. He wants this to be dramatic. Well, they don't answer the door, so what does he do?

Then he gets up from their yard, because that hasn't worked, he walks out in the middle of the road, and he lays down there. Now, mind you, this is after Mr. Donis had already left. We'll get back to that in one

> second. He lies down in the middle of the road and starts shouting. Well, that neighbor didn't work, let's try to wake the whole neighborhood, let's see who does work.
>
> Well, [a neighbor] was outside, out on her back patio, which faces that residence. She will be able to tell when you [sic] she testifies that she saw the Cadillac pull up, the Cadillac Explorer [sic], Mr. Donis' car. She saw it pull up, and she heard [the victim] yelling. What she won't be able to tell you, what the evidence won't show you, she won't come in here and say that she heard two males fighting. She won't come in here and say that she heard a female at all. She won't even tell you she saw a second male or female. She won't tell you she heard a gunshot. But again, she'll tell you she was out back, and that she was — her back yard faces the front of [the victim's] residence.
>
> Now [the victim] gets in this fight, gets in this argument with Mr. Donis, and then needs to make this scene, because Mr. Donis already told him he was going to call the police, because [the victim] stole his car. That's why we're here today. That's your story.

Tr. 7/22/2008, pp.11:17 – 14:8.

The Colorado Court of Appeals addressed the substance of claim 12 in the context of a claim that postconviction counsel was ineffective. Docket No. 12-9 at 11 ("For Donis to prevail on his concession claim, he must establish that his first postconviction counsel was ineffective by failing to raise this issue at the first postconviction hearing."). Citing *McCoy v. Louisiana*, 584 U.S. 414 (2018), the state court recognized that "[a] defendant has a Sixth Amendment right to autonomy over deciding his defense, which includes the right to either plead guilty or assert his innocence," that "*Strickland* does not apply where a client's autonomy, rather than counsel's competence, is at issue," and that "a defense counsel's violation of the client's right to autonomy constitutes structural error, meaning that, if error is found, the defendant is entitled to automatic reversal." Docket No. 12-9 at 9, 10.

The postconviction court concluded that trial counsel did not admit Mr. Donis was guilty of anything because counsel's sarcastic remarks about the charges were not judicial admissions of guilt, and the Colorado Court of Appeals agreed. In particular, the Colorado Court of Appeals determined as a factual matter that Mr. Donis' presence at the scene was undisputed, and thus "trial counsel's strategy to acknowledge Donis was present – but to assert that he did not commit any of the charged conduct – was consistent with Donis' desire to assert his innocence." *Id.* at 23. With respect to the kidnapping charge in particular, the appellate court relied on trial counsel's testimony at a postconviction hearing "that he was trying to convey in his opening statement that the prosecution could not prove that Donis had 'enticed or persuaded' the victim 'to go from one place to another," meaning "the evidence would show that Donis could not have committed kidnapping." *Id.* at 25. And with respect to the statement that "maybe there was a third-degree assault," the state court rejected Mr. Donis' argument that this was a concession of guilt "because Donis was not charged with that offense," and "[m]ore importantly, [trial counsel] again made this statement sarcastically." *Id.* at 26.

Mr. Donis does not argue the state court's determination was contrary to clearly established federal law under § 2254(d)(1).

Mr. Donis does argue the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). In particular, he challenges the state court's determination that the portions of trial counsel's opening statement he is challenging were sarcasm and not admissions of guilt. But the Court presumes the sarcasm determination is correct, and Mr. Donis'

alternative interpretation is not clear and convincing evidence that rebuts the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Based on the Court's review of the state court record and trial counsel's opening statement in particular, the Court cannot conclude that Mr. Donis has shown "the state courts plainly misapprehended or misstated the record in making their findings, and the misapprehension goes to a material factual issue that is central to [his] claim[s]." *Smith*, 824 F.3d at 1241.

Mr. Donis argues the state court unreasonably applied *McCoy*. But his unreasonable application argument ignores the presumptively correct factual determination the state court made, namely, that trial counsel's alleged concessions were sarcastic remarks intended to convey that the prosecution could not prove its case because the evidence supporting the alleged crimes was plainly insufficient. Under these circumstances, Mr. Donis fails to demonstrate the state court's rejection of the concession claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

For these reasons, Mr. Donis is not entitled to relief with respect to claim 12.

**3. Claim 13**

Mr. Donis argues in claim 13 that counsel was ineffective by failing to introduce evidence that two witnesses (the victim and David McKinney) identified individuals who could not have committed the crimes as the perpetrators. The victim originally identified a photograph of David Donis, Jr., who is Mr. Donis' son and who was incarcerated at the time, as the suspect. And Mr. McKinney picked Autumn Ray Parker, an individual

who also was incarcerated at the time, out of a lineup and identified her as the female accomplice. Mr. Donis concedes that the misidentification by the victim actually was addressed during the victim's testimony, and that the victim testified that Mr. Donis and his son look alike. Docket No. 1 at 28. However, he contends trial counsel failed to present the actual photograph of his son that the police showed the victim. Mr. McKinney's misidentification of the female accomplice was not mentioned during his testimony at Mr. Donis' trial.

Like claim 12, both parts of claim 13 were raised in state court in the context of claims that postconviction counsel was ineffective. Docket No. 12-9 at 6 ("Donis asserted multiple claims in his second Rule 35(c) motion, including whether first postconviction counsel was ineffective by failing to (1) raise the victim's misidentification of Donis' son."); Docket No. 12-9 at 34-35 ("Donis contends that the second postconviction court erred by finding first postconviction counsel was not ineffective when she failed to raise trial counsel's deficient performance by not impeaching McKinney for his misidentification of Donis' alleged female accomplice."). However, the first part of claim 13 that relates to the victim's misidentification of Mr. Donis' son is not exhausted because the Colorado Court of Appeals determined the claim was not raised in Mr. Donis' opening brief and was abandoned. Docket No. 12-9 at 6, 7. In any event, even if the first part of claim 13 was properly before the Court, the claim lacks merit under *Strickland*. The state court record confirms Mr. Donis' concession that the victim's misidentification was addressed during the victim's direct examination and trial counsel's cross-examination. *See* Tr. 7/22/2008, pp.98:3 –

100:10, 103:9 – 21. The fact that the actual photograph the victim misidentified was not introduced as evidence does not demonstrate trial counsel's performance was deficient or that Mr. Donis was prejudiced because Mr. Donis' presence at the scene was not in dispute and was consistent with counsel's reasonable man defense strategy.

With respect to the second part of claim 13 that relates to Mr. McKinney's misidentification of the female accomplice, the Colorado Court of Appeals rejected the claim because Mr. Donis failed to demonstrate prejudice under *Strickland*. The state court reasoned as follows:

> McKinney testified at trial that Donis had a female accomplice with him on the night of the incident. It is undisputed that the police showed McKinney a photo array and McKinney identified as the female accomplice a woman who was incarcerated at the time of the incident. As a result, Donis contends that trial counsel had this information yet failed to impeach McKinney about his misidentification. And according to Donis, because McKinney was a crucial prosecution witness, trial counsel was deficient by not using this impeachment material to attack McKinney's credibility. The second postconviction court held that, even though trial counsel had no tactical reason for not impeaching McKinney with his misidentification of the female accomplice, the overall cross-examination of McKinney met the "constitutional standard of professional adequacy."
>
> Although not worded as such, we view the postconviction court's conclusion on this issue to be a prejudice, rather than performance, analysis. "*Strickland* generally requires a showing that the defendant was prejudiced — that is, that there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance." *People v. Sharp*, 2019 COA 133, ¶ 26 (citing *Strickland*, 466 U.S at 687-88).
>
> Even assuming trial counsel's performance was deficient by failing to impeach McKinney on his misidentification, Donis failed to prove prejudice because he cannot show how further undermining McKinney's credibility would have resulted in a different outcome. *See Moody*, 159 P.3d at 615 (we may affirm an order on any ground supported in the record); *see also Sharp*, ¶ 12 (whether a defendant has satisfied

> *Strickland*'s performance or prejudice prongs are legal conclusions "to which [an appellate court] do[es] not defer").
>
> [Trial counsel] attacked McKinney's credibility during cross-examination on a variety of topics, including McKinney's relationship with the victim, how much alcohol he consumed the night of the incident, his inability to remember details about Donis and his female accomplice, whether Donis reached around and grabbed a gun from his waistband, and whether McKinney smoked crack the night of the incident.
>
> [Trial counsel] drew the jury's attention to these inconsistencies and omissions by comparing McKinney's statement to a police officer's trial testimony. And in closing argument, [trial counsel] used those inconsistencies in McKinney's testimony to tell the jury that McKinney was "not always a truthful guy."
>
> Accordingly, we conclude that there was no reasonable probability that impeaching McKinney on the misidentification issue would have changed the outcome. *See People v. Dunlap*, 124 P.3d 780, 798 (Colo. App. 2004) (finding failure to impeach witness did not demonstrate a reasonable probability that the additional information would have caused a different outcome). Because Donis has failed to meet his burden of showing both deficient and prejudicial performance, we discern no error.

Docket No. 12-9 at 35-37.

Mr. Donis does not argue the state court's determination was contrary to clearly established federal law under § 2254(d)(1).

Mr. Donis does argue that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). But he does not identify any factual errors underlying the state court's decision. Instead, he challenges the state court's determination that he was not prejudiced, an argument that goes to the issue of whether the state court unreasonably applied *Strickland*.

The Court is not persuaded that the state court unreasonably applied *Strickland*

because Mr. Donis fails to demonstrate the state court's rejection of this ineffective assistance of counsel claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The Court reiterates that "[t]he question [under § 2254(d)] is whether *any* reasonable argument exists that counsel satisfied *Strickland's* deferential standard." *Harmon*, 936 F.3d at 1058. Here, the state court determined there was no reasonable probability that additional impeachment of Mr. McKinney relevant to the identity of the female accomplice would have changed the outcome. Given the fact that Mr. Donis' presence at the scene was not in dispute, this conclusion is reasonable. And, contrary to Mr. Donis' assertion, Mr. McKinney's misidentification of the female accomplice is not "specific powerful exculpatory evidence" because it does not directly undermine Mr. McKinney's identification of Donis.

For these reasons, Mr. Donis is not entitled to relief with respect to claim 13.

**B. Claim 15**

Mr. Donis contends in claim 15 that the trial court erred by preventing him from representing himself at trial.

A defendant in a criminal proceeding has a constitutional right to waive his right to counsel and to represent himself. *Faretta v. California*, 422 U.S. 806, 817 (1975). A waiver may take the form of an express statement relinquishing the right to counsel or, under certain circumstances, a waiver can be implied from the facts of the case. *See North Carolina v. Butler*, 441 U.S. 369 (1979). To be effective, a waiver of counsel

must be knowing, voluntary, and intelligent. *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

On direct appeal, the Colorado Court of Appeals addressed Mr. Donis' claim "that the trial court erred by appointing counsel to represent him despite his unequivocal requests to represent himself." Docket No. 12-3 at 4. The state court rejected this claim because Mr. Donis' disruptive behavior justified the trial court's decision to appoint counsel over his objection.

> Here, the record demonstrates that defendant persistently engaged in obstreperous conduct throughout pretrial proceedings.
>
> At the April 30, 2007, preliminary hearing, defendant immediately began interrupting defense counsel and the court to complain that he was not satisfied with his attorneys. The trial court cautioned him several times to wait until it was his turn to speak, and eventually warned him that, if he could not be quiet, he would be removed from the courtroom.
>
> Defense counsel asked for a recess to "try to calm him down before we have contempt charges." This attempt was unsuccessful. Two of defendant's attorneys then expressed concerns about his competency. One of them, who had known defendant for "close to a year," stated that defendant had been rocking himself back and forth while they spoke, and that he had never seen defendant behave in such an agitated manner. The trial court denied defense counsel's request for a competency evaluation, but repeated its warning to defendant that he must refrain from disruptive conduct or be found in contempt of court and removed from the courtroom.
>
> During testimony by the prosecution's first witness, defendant interrupted, saying that he was "ready to go" and that he was "being railroaded" because defense counsel had not objected to leading questions by the prosecutor. The trial court found him in contempt and ordered him removed from the courtroom.
>
> Subsequent hearings followed a similar pattern. Defendant repeatedly interrupted the trial court, arguing about issues that had already been decided against him, and accusing defense counsel of "conspiring" against him by requesting a competency evaluation. At various times, defendant turned him back on the court, made

inappropriate comments about the judge's grandchild, threatened defense counsel's daughter with divine retribution, and refused to answer the court's questions. He was removed from the courtroom twice more for disruptive conduct.

After a conflict hearing before another judge, who determined that no conflict existed justifying the removal of the public defender and appointment of alternative defense counsel, the trial court explained to defendant that his only options were to continue with the public defender or represent himself. Defendant, however, refused repeatedly to tell the trial court his choice, and instead continued to argue that a conflict existed. Only after the trial court had asked him ten times did defendant state that he wished to dismiss the public defender and represent himself.

The trial court dismissed the public defender and appointed advisory counsel. At a motions hearing three days before trial was to begin, defendant was loud and aggressive with the trial court and demanded that the court recuse. The trial court took a recess to allow defendant to speak with advisory counsel to "get [him] to the point where [he would] specifically answer the court's questions." Following the recess, defendant asserted that he would not proceed with trial unless another judge took over the case. He then refused to speak or respond to any of the trial court's questions for the remainder of the hearing.

On the day trial was to start, defendant refused to address the trial court's preliminary questions, instead repeating his prior complaints and insisting that the trial court and defense counsel had broken the law and violated ethical rules. He turned his back on the court and stated repeatedly that he would not participate in the proceedings and that he would not be a "clown" in the trial court's "circus." After several more warnings, the trial court found defendant in contempt, ordered him removed from the courtroom, and appointed counsel to represent him over his objection. Trial was continued to allow newly appointed defense counsel adequate time to prepare.

In appointing counsel to represent defendant, the trial court noted,

> [Defendant] is engaging and continuing to engage in such disruptive behavior that this Court cannot conduct this trial. He has chosen, when I have been quiet and respectful with him, he has chosen to continue to be disorderly. He has chosen to not have the Court proceed forward. . . . He refuses to listen to the Court after being admonished.

> The record contains ample support for the trial court's finding that defendant's conduct was disruptive enough to justify the appointment of counsel over his objection. The trial court was more than diligent in its attempts to accommodate defendant's desire to represent himself, and it followed the procedure outlined in *Cohn* by appointing advisory counsel when it appeared likely that defendant's conduct might require his removal during trial. We therefore perceive no error by the trial court.

Docket No. 12-3 at 6-10.

Mr. Donis' claim on direct appeal that was addressed by the Colorado Court of Appeals related to the reappointment of counsel over his objection on November 5, 2007, the day his trial was scheduled to start. *See* Docket No. 12-2 at 21-27. In this action, Mr. Donis argues his right to self-representation was violated for approximately six months beginning on April 30, 2007 until he finally was allowed to proceed *pro se* on October 12, 2007. But this specific claim is not exhausted because, even though the claim was raised in state court postconviction proceedings, the claim was not fairly presented to the Colorado appellate courts. *See* Docket No. 12-5 at 12-13 ("Second, defendant contends that the trial court erred when it ignored his request in April 2007 to dismiss his appointed attorneys and represent himself. But defendant raised arguments concerning his right to self-representation on direct appeal. And, although he did not specifically challenge the trial court's action at the April 2007 hearing on direct appeal, he could have done so.").

In some instances, ineffective assistance of direct appeal counsel can establish cause to overcome a procedural default, but the ineffective assistance of appellate counsel claim must first be raised as an independent constitutional claim in state court.

*See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Here, the record before the Court does not demonstrate Mr. Donis fairly presented to the state courts any claim that direct appeal counsel was ineffective with respect to the self-representation claim. Therefore, Mr. Donis' claim regarding the denial of his right to self-representation from April 30, 2007 to October 12, 2007 is not properly before the Court.

With respect to the claim Mr. Donis actually raised and exhausted on direct appeal, i.e., the trial court erred by revoking his right to represent himself on November 5, 2007 and by reappointing counsel, Mr. Donis fails to demonstrate he is entitled to relief under § 2254(d). He does not argue the state court's decision is contrary to clearly established federal law. He does argue that his conduct was not disruptive, but he fails to present clear and convincing evidence to overcome the presumption of correctness that attaches to the state court's factual finding that he "persistently engaged in obstreperous conduct throughout pretrial proceedings." Docket No. 12-3 at 6. And based on the presumptively correct factual determination that he persistently engaged in disruptive and obstreperous conduct throughout pretrial proceedings, the state court's rejection of this claim is not an unreasonable application of clearly established federal law. *See McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984) (the right to self-representation is contingent on the defendant being "able and willing to abide by rules of procedure and courtroom protocol"); *Faretta*, 422 U.S. at 834 n. 46 (noting that "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct").

For these reasons, Mr. Donis is not entitled to relief with respect to claim 15.

**C. Claim 16**

Mr. Donis contends in claim 16 that the trial court misadvised him about the effects of testifying at trial. Specifically, he alleges he was advised that the prosecution could ask whether his prior convictions resulted from a guilty plea or trial, which was incorrect. The Colorado Court of Appeals reasoned as follows in addressing this claim in postconviction proceedings:

> Defendant did not testify at trial. He contends that the trial court's advisement about his right to testify was defective. He continues by asserting that he would have testified if the trial court had advised him properly. We reject this contention.
>
> To ensure that defendants' waivers of the right to testify are voluntary, knowing, and intelligent, trial courts must advise them of five factors: (1) they have a right to testify; (2) no one can prevent them from testifying; (3) the prosecution may cross-examine them if they testify; (4) such cross-examination may include questions about prior felony convictions; and (5) if cross-examination discloses prior convictions, then trial courts will instruct juries to consider those convictions only in the context of evaluating the defendants' credibility. *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984).
>
> The trial court in this case also advised defendant that the prosecution could ask him whether any prior felony convictions that he may have had were the products of jury trials or guilty pleas. (Defendant had previously pled guilty to robbery in an unrelated case. He admitted that he had used a deadly weapon when he committed that crime.) Defendant points out that, in *People v. Gomez*, 211 P.3d 53, 57 (Colo. App. 2008), *abrogated on other grounds by Moore v. People*, 2014 CO 8, the division held that such an additional advisement was improper.
>
> But the division did not decide *Gomez* until *after* the jury in this case convicted defendant. So the trial court could not have been aware of *Gomez* when it advised defendant about the parameters of his right to testify. *See People v. Valdez*, 2014 COA 125, ¶ 27 ("[W]here the law is unsettled, the trial court's alleged error with respect to the law cannot constitute plain error.").

> What if we assume, without deciding, that we should apply *Gomez's* subsequent decision to this case? *See Henderson v. United States*, ___ U.S. ___, ___, 133 S. Ct. 1121, 1130-31 (2013). We would nonetheless conclude that the record supports the trial court's decision.
>
> *Gomez* does not require a postconviction court to grant a defendant's request for a new trial if the prosecution can show that, despite the error, the defendant's "waiver was voluntary, knowing, and intentional because he 'nevertheless did understand fully his right to testify.'" *Gomez*, 211 P.3d at 57 (quoting *People v. Harding*, 104 P.3d 881, 885 (Colo. 2005)).
>
> After weighing all the testimony and evaluating the credibility of each witness, the postconviction court in this case found that (1) the improper advisement did not affect defendant's decision that he would not testify; and (2) defendant's waiver of the right to testify was voluntary, knowing, and intelligent. We conclude, for the following reasons, that the record supports these findings.
>
> "[I]t is within the province of the [postconviction] court, as trier of fact, to determine the credibility of . . . witnesses and the weight to be given their testimony; if the evidence supports the findings and judgment of the [postconviction] court, they will not be disturbed on review." *People v. McDaniel*, 74 P.3d 454, 456 (Colo. App. 2003) (citing *Sickich*, 935 P.2d at 73).
>
> One of defendant's trial attorneys testified that whether defendant's prior felony conviction for robbery with a deadly weapon was the product of a guilty plea or a trial was not a "central concern" in assessing the risks that defendant faced if he testified. Rather, his trial attorneys were more concerned with disclosing to the jury that defendant had *previously* been convicted of robbery with a deadly weapon. And defendant's testimony would have led to that prejudicial fact being disclosed even if the trial court had clairvoyantly advised him consistently with the division's holding in *Gomez*.
>
> It was within the postconviction court's province to evaluate the trial attorney's credibility and to give that testimony weight. *See id*. We conclude that the record supports the postconviction court's decision to rely on that testimony when it made its findings, so we will not disturb that decision on review. *See id*.

Docket No. 12-5 at 7-11.

It is clear that the right to testify in one's own defense is a constitutional right. *See Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). However, "the Supreme Court has never articulated the standard for assessing whether a criminal defendant has validly waived his right to testify or determined who has the burden of production and proof under particular circumstances." *Jenkins v. Bergeron*, 824 F.3d 148, 153 (1st Cir. 2016); *see also Turley v. Estep,* 375 F. App'x. 867, 870 (10th Cir. 2010) (unpublished) (denying federal habeas relief for the petitioner's claim challenging a defective *Curtis* advisement because "there is no general requirement [under federal law] . . . that a trial court inquire into a defendant's decision whether to testify, much less advise a defendant regarding the potential consequences of that decision"); *Moore v. Williams,* 825 F. App'x 586, 588 (10th Cir. 2020) (same). As noted above, the existence of clearly established federal law is the threshold inquiry under § 2254(d)(1), and the absence of clearly established federal law is the end of the Court's inquiry. *See House*, 527 F.3d at 1018.

To the extent Mr. Donis argues the state court decision is based on an unreasonable determination of the facts in light of the evidence presented, the Court disagrees. The Colorado Court of Appeals determined as a factual matter that "the improper advisement did not affect defendant's decision that he would not testify." Docket No. 12-5 at 10. The Court presumes this factual finding is correct, and Mr. Donis fails to present clear and convincing evidence to rebut the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Thus, the Court cannot conclude that Mr. Donis has shown "the state courts plainly misapprehended or misstated the record in

making their findings, and the misapprehension goes to a material factual issue that is central to [his] claim." *Smith*, 824 F.3d at 1241.

For these reasons, Mr. Donis is not entitled to relief with respect to claim 16.

**IV. CONCLUSION**

For the reasons discussed in this order, Mr. Donis is not entitled to relief on any of his remaining claims. Mr. Donis also is not entitled to relief on the new cumulative error claim he raises in his reply because the Court has not found any individual errors. Docket No. 29 at 25. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Docket No. 1, is denied and this case is dismissed with prejudice. It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED October 15, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge